**BROAN MANUFACTURING COMPANY, INC., Plaintiff–Appellee, Cross–Appellant,**

v.

**ASSOCIATED DISTRIBUTORS, INC.; Republic Manufacturing and Import Company, Inc., Defendants–Appellants, Cross–Appellees.**

Nos. 89–6155, 89–6156.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1990.

Decided Jan. 23, 1991.

a question of statutory interpretation that has    not yet been addressed by the state courts.

John C. Speer, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Tenn., Francis W. Deisinger, Stephen T. Jacobs (argued), Christine L. Thierfelder, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for plaintiff-appellee cross-appellant.

Jef Feibelman (argued), Burch, Porter & Johnson, Memphis, Tenn., Dick Wilson, Jr., Dillard, Greer, Westmoreland & Wilson, Atlanta, Ga., for defendants-appellants cross-appellees.

Before KENNEDY and MILBURN, Circuit Judges; and ENGEL, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendants Associated Distributors ("Associated") and Republic Manufacturing and Import Company ("Republic") appeal and plaintiff Broan Manufacturing Company ("Broan") cross-appeals the damages awarded to Broan following a jury trial in this action for trademark infringement, false designation and false advertising under the Lanham Act, 15 U.S.C. § 1125(a). The only issues on appeal are those related to damages.

At trial, the District Court allowed the jury to assess damages for future mistaken product liability claims which Broan claims it will have to pay as a result of the trademark violations by Associated and Republic. The defendants contend that Broan did not prove those damages with the requisite certainty and, therefore, that the District Court erred in allowing the jury to award damages under that theory. The District Court also ruled at trial that Broan could not seek damages for lost profits from lost future sales of Broan products to the defendants. The court reasoned that those damages would be too speculative as a matter of law given the specific facts in this case.

For the reasons that follow we AFFIRM the District Court's allowance of damages for future mistaken product liability claims but we REVERSE the District Court's ruling refusing to allow Broan to present evidence of lost sales to defendant Associated.

## I. Background

Broan is a manufacturer of home ventilation products including bathroom fans, lights and heaters. These fans, lights and heaters are marketed under the registered trademark "Nautilus." The defendants are closely related privately held corporations. Associated is a distribution company which essentially acts as the buying entity for products to be sold at "West's" building material stores located in the southeast

United States. Republic is a company which arranges for the importation of products from overseas, most of which are sold to Associated for distribution to West's stores.

In late 1984, Broan and Associated reached an agreement whereby Associated agreed to purchase from Broan its Nautilus bath fan line of products for distribution to the West's stores. There was no written agreement and the relationship had no express duration. As part of this agreement, Broan supplied both point of sale displays (on which was prominently displayed the Nautilus trademark) and advertising credits. Broan employees helped set up the displays at the West's stores. Associated began to purchase the Nautilus products, which were then distributed to the West's stores and sold to the public from the Nautilus point of sale displays.

Late in 1986, Broan noticed that its sales of the Nautilus bath fan products to Associated were declining and in early 1987 they stopped entirely. Upon investigation, Broan discovered that the West's stores were selling nearly exact Taiwanese copies of the Nautilus products in packaging nearly identical to Nautilus packaging from the Nautilus point of sale displays. Broan contended that Republic, acting at the direction of Associated, sent authentic Nautilus products to the California agent of the Taiwanese manufacturer, the Commander Electrical Corporation ("Commander"), for the express purpose that they be copied and imported to the United States for distribution by Associated to the West's stores. Associated switched to another supplier in 1987 after selling approximately 5,000 of the Commander copies.

Broan instituted this lawsuit in June 1987, claiming that the actions of Associated and Republic constituted trademark infringement, false designation of origin, and false advertising, all in violation of the Lanham Act, 15 U.S.C. § 1125. The case was tried before a jury which found in favor of Broan on all three theories and awarded damages in the amount of $523,-

000 against Associated and Republic.[1]

As part of its claim for damages, Broan sought to introduce evidence that it expected to enjoy a long-term relationship with Associated and therefore should be awarded damages resulting from lost future profits it claims would have resulted from future sales to Associated if not for Associated's Lanham Act violations. The District Court excluded proof of these damages, finding them to be too speculative.

Broan also sought damages resulting from future product liability claims that would be mistakenly brought against it for damages caused by defective Commander products. Broan presented evidence that the Commander "knock-offs" would be mis-identified as Broan products, that the Commander products were of vastly inferior quality and were likely to cause fires, and that Broan would incur future damages from claims due to the misidentification. Over the objections of Associated and Republic, the District Court allowed Broan to present evidence on this issue, and it appears that a large portion of the jury's damage award consisted of these damages.

After the verdict, both Broan and the defendants moved the court to adjust damages. Both motions were denied and these appeals followed.

## II. The Legal Standards Applicable to Damages for Lanham Act Violations

At the trial below, the jury found that Associated and Republic violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The damages recoverable for a section 43(a) violation are governed by section 35(a) of the Act, 15 U.S.C. § 1117(a). Section 1117(a) provides in part that when a violation of section 1125(a) occurs, "the plaintiff shall be entitled ... to recover (1) defendant's profits, (2) *any damages* sustained by the plaintiff, and (3) the costs of the action." (Emphasis added.)

■ The general proof and measure of damages in a trademark action is governed by the law of damages of tort actions. *See, e.g., Aladdin Mfg. Co. v. Mantle Lamp Co. of America,* 116 F.2d 708, 716 (7th Cir.1941). Therefore, "[t]he evidence to be received, the circumstances to be considered and the amount of recovery should follow the rules covering tort actions." *Id.* Under general tort principles governing compensatory damages, "the infringer-tortfeasor is liable for all injuries caused to plaintiff by the wrongful act, whether or not actually anticipated or contemplated by the defendant when it performed the acts of infringement." 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 30:27 at 509 (2d ed. 1984) (citing cases).

As a general rule, "damages are not permitted which are remote and speculative in nature." *Agricultural Servs. Ass'n v. Ferry–Morse Seed Co.,* 551 F.2d 1057, 1072 (6th Cir.1977). "This rule serves to preclude recovery, however, only where the *fact* of damage is uncertain, *i.e.,* where the damage claimed is not the certain result of the wrong, not where the *amount* of damage alone is uncertain." *Grantham and Mann, Inc. v. American Safety Prods.,* 831 F.2d 596, 601–02 (6th Cir.1987) (emphasis added) (citations omitted); *see also Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562–63, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). Indeed, in trademark cases courts draw a sharp distinction between proof of the *fact* of damage and proof of the *amount* of damage. As the Seventh Circuit pointed out:

When determining damages in an unfair trade practices case, the courts distinguish between the amount of proof needed to show "that some damages were the certain result of the wrong" and the amount of proof needed to ascertain the exact amount of damage. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 267 [66 S.Ct. 574, 581, 90 L.Ed.

1. The District Court instructed the jury that there were four types of damages that Broan could recover: (1) out-of-pocket expenses; (2) direct economic loss, whether past or future; (3) future net profits that would have been earned; and (4) any measurable loss of good will. It is not clear what part of the $523,000 allowed as damages is for any particular one of these types.

652] ∴.. (1946) (Frankfurter, J., dissenting on other grounds). The plaintiff is held to a lower burden of proof in ascertaining the exact amount of damages because, "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Id.* at 265 [66 S.Ct. at 580]. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 745 (7th Cir.1985). Thus, although to set a damage figure "arbitrarily" or through "pure guesswork" is impermissible, *Ferry–Morse Seed,* 551 F.2d at 1072, "[o]nce the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages." *Grantham and Mann,* 831 F.2d at 602; *see also Ferry–Morse Seed,* 551 F.2d at 1072 ("A plaintiff 'must present "data from which the amount of probable loss could be ascertained as a matter of reasonable inference."'" (citations omitted)). These are the principles which must be applied to the damages questions before us.

In this case Broan sought to recover damages for, inter alia, the lost profits which it claims would have accrued from future sales to Associated had it not been for Associated's infringement scheme and costs which Broan would incur in the future to handle product liability claims caused by the infringing products. Since section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)) provides that *"any* damages sustained by the plaintiff" are recoverable (emphasis added), Broan is entitled to damages on both of these theories if it satisfies its burden of proof as to the fact and amount of those damages.

### III. Damages for Lost Profits

█ The District Court ruled that any loss of profits predicated on future sales that Broan would have made to Associated had Associated not copied Broan's products was too speculative as a matter of law; Broan contends that this was an error. To establish the *fact* of such future damages,

Broan must demonstrate that there is a reasonable certainty that they would result. *See* Restatement (Second) of Torts § 912 comments d and e (1977). In other words, Broan must show that it is reasonably certain that, but for the infringement scheme of Associated and Republic, Associated would have continued to purchase Broan's products. In order to meet this burden Broan offered to show the following: (1) although there was no contractual agreement, Associated and Broan both expected a long-term relationship; (2) the Broan program was successful for Associated; (3) Broan had never before lost a customer the size of Associated once it had begun a supplier-customer relationship; and (4) the reason Associated stopped buying Broan products at the time it did was because it had engaged in an illegal scheme to substitute lower cost "knock-off" products in place of genuine Broan products. From that evidence, Broan would argue that but for the infringement Broan would have continued selling its products to Associated for some period of time. As to the amount of such damages, Broan sought to argue that a ten-year relationship would have ensued, or in the alternative, that Broan should be entitled to lost future profits for the 21 month period from the time of the infringement until Broan had secured a "replacement" customer in the southeast United States.

The District Court rejected Broan's offer of proof and held that the lost profits damages, in "this particular fact situation, as a matter of law [are] too speculative and uncertain to permit the jury to consider" them. In their briefs to this Court, the litigants each argue that the District Court's holding in this regard was correctly or incorrectly based on the fact that there was no contract obligating Associated to purchase from Broan. However, the District Court stated that, while the absence of a contract was "relevant," it was "not determinative." The court stated its actual reasoning thus:

I understand [Broan's] argument.... [T]here are several problems I have with it. Some of those problems have to do

with the particular circumstances of your relationship with West, the fact that it was not a legal obligation to buy in the future; the fact that this was, in fact, a fairly short term relationship, but then you also have the fact that in this particular case you have a major account ... who did, in fact, decide to go somewhere else and to try to get a cheaper product. In the course of doing that, the alleged infringement ... occurred, but the decision to go someplace else was, in fact, made by this particular customer.

\* \* \* \* \* \*

[T]he proof is undisputed that [Associated made] a decision to stop buying your product and to go someplace else. They did that without regard to whether they also decided to commit the illegal acts that are the subject ... of this lawsuit....

\* \* \* \* \* \*

It is that very fact that they decided to go elsewhere rather than continuing to buy your product, without regard to what their motives were, ... it is that very fact that makes it difficult for you to claim they would have continued to do business with you in the future.

Thus, the District Court's legal conclusion was predicated on its factual finding that Associated would have discontinued purchasing bath fans from Broan even absent the infringement scheme. Broan challenges that finding here. We agree with Broan that the District Court erred in making this determination. There is no direct evidence to support the court's conclusion

that Associated would have stopped buying from Broan *at the time they did* in the absence of the plan to "knock-off" genuine Nautilus products. While Associated argues that it has a history of short-term relationships with its vendors, the relationship with Broan lasted for over two years and Broan was never notified that the relationship was under review. Further, there is no evidence in the record suggesting that Associated was legitimately seeking a replacement supplier for Broan, nor does Associated argue as much in its brief. This is relevant insofar as it does not support the District Court's conclusion that Associated was seeking to change vendors and went awry simply in the method to accomplish that legitimate end.[2]

Associated argues that since it was under no legal obligation to continue purchasing from Broan and could have decided to change suppliers legitimately at any time, there is too much uncertainty as to whether their Lanham Act violations caused any loss of future sales. We disagree. The lack of a contractual commitment to purchase for a definite period of time does not render Broan's claimed damages speculative. Some uncertainty regarding what might have happened in the absence of the copying scheme is not fatal. As we have already made clear, Broan must establish the fact of damages with *reasonable*, not absolute, certainty.[3]

Broan has shown that Associated and Republic engaged in unfair trade practices and trademark infringement. Broan offered evidence that Associated communi-

2. In addition, there was testimony to the effect that Associated stopped buying other products from Broan, such as range hoods, as a direct result of the lawsuit filed by Broan against Associated. This suggests that had Associated not engaged in the unfair trade practices and trademark infringement, Broan would not have lost Associated as a customer for those other products at the time they did. These potential lost sales were not addressed by the District Court, which focused on only the bath fans which were the subject of the copying scheme.

3. *See also Coverdell v. Mid–South Farm Equip. Ass'n,* 335 F.2d 9 (6th Cir.1964). In *Coverdell,* an insurance agent entered into a personal service contract whereby the agent was to provide the defendant with a group life insurance plan to cover defendant's members. After the plaintiff prepared and delivered solicitation materials, the defendant awarded the contract to one of plaintiff's competitors. Plaintiff sought damages for future profits it would have received if not for defendant's wrongful action. This Court held that plaintiff's damages were not speculative as to fact or amount. Although that case involved a contract, it was of no certain duration and could be cancelled at any time, which makes it similar to the arrangement between Broan and Associated. This Court rejected the defendant's argument that damages were speculative simply because the group plan written by plaintiff could have been cancelled at any time.

cated a desire for a long-term business relationship and had not indicated any dissatisfaction, that the sale of Broan products was a profitable venture for Associated, and that Broan had historically enjoyed long-standing relationships with all of its major accounts, of which Associated was one. At least in the absence of convincing evidence that Associated would have changed suppliers *when they did* without the Lanham Act violations, the evidence offered by Broan was sufficient for a jury to conclude "as a matter of just and reasonable inference from the proof of defendants' wrongful acts and their tendency to injure [Broan's] business ... that defendants' wrongful acts had caused damage to [Broan]." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946). Accordingly, the District Court erred in not allowing Broan to present its evidence to the jury on the lost future profits theory.

On remand, both Broan and Associated will presumably introduce evidence pertinent to the length of the relationship had there been no Lanham Act violations. In determining how long Broan would have continued to sell Nautilus products to Associated absent the copying scheme, the jury must focus on what Associated would have done. Unless the factfinder finds that Associated would have changed suppliers legitimately at the same time that it did so through its illegal scheme, this conflicting evidence bears only on the *amount* of damage incurred by Broan, not whether Broan has incurred it. The record indicates that Associated changed from Commander to a legitimate supplier late in 1987 in order to secure a more favorable price. Therefore, we believe that the point in time when that supplier change occurred established the outermost time limit for which Broan can recover lost profits damages.

### IV. Damages for Future Mistaken Product Liability Claims

The District Court allowed Broan to recover damages for future mistaken product liability claims against Broan which would result from the copying scheme. Associated objected to the introduction of evidence in support of that theory at trial and asserts its admission as error on appeal, arguing that Broan's evidence was insufficient both as to the *fact* and *amount* of such damages, rendering them speculative.

Essentially, Broan's theory of damages was this: (1) Commander "knock-off" bathroom fan units are of inferior quality; (2) a certain number of those products will fail in the future, causing fires; (3) some of those Commander products which cause fires will be misidentified as Broan products; and (4) of those that are misidentified as Broan products, a number will result in claims against Broan, which will result in investigative and defense costs and, in some cases where fire renders the fan's manufacturer unidentifiable, settlements to claimants. Broan's proof of these damages is primarily contained in the expert testimony of David W. Wolbrink, Broan's vice-president of engineering, and the testimony of James D. Crenshaw, an insurance adjuster who had investigated a fire allegedly caused by a Commander bathroom fan unit sold by West's.

Broan amply demonstrated that the Commander units, although outwardly almost identical to the genuine Nautilus products, were of vastly inferior quality and presented heightened fire risks. Mr. Wolbrink, who was qualified as an in-house expert, testified that the Commander products were not properly designed or manufactured from the standpoint of reliability or safety. During his examination and testing of 50 Commander units, Wolbrink discovered numerous defects in their construction, many or all of which created a significant risk of fire. For example, each bath fan contains a "thermoprotector" designed to shut the unit down if it overheats. This device is a critical safety feature in home heating and electrical products. Wolbrink testified that the thermoprotectors in many Commander copies were improperly wired so as to render them useless. Wolbrink also found that every Commander copy he examined had a substandard bearing system which can cause the fan rotor to stall. He testified that once this occurs the motor

will overheat and "the chances of fire are very, very high." Wolbrink also testified that the fire hazard is compounded by many other defects, including inadequate insulation and flammable material around the motor. Broan also provided substantial evidence that the Commander copies were routinely mistaken for genuine Nautilus products. Many Commander units were returned by customers due to defective performance. And of these, many were misidentified by West's personnel presumably familiar with both Nautilus and Commander products and mistakenly sent back to Broan for a returned product credit. In fact, it was this confusion that alerted Broan to the copying scheme and eventually led to this lawsuit.

The final element of Broan's proof of the fact of damage, namely that the misidentification of the fire-prone Commander products would result in actual claims against Broan, is more problematic. Associated argues that as of the date of trial Broan had not yet suffered any damage from a mistaken product liability claim and thus, to award damages for future possible claims was speculative. However, Broan introduced evidence of one such claim that had already been made. Mr. James D. Crenshaw, an insurance adjuster, testified that in September 1987, he had investigated the source of a bath fan involved in a house fire. He traced the purchase of the bath fan to a West's store. A West's manager told Crenshaw that the product was a Nautilus unit. It was only after Crenshaw had contacted Broan to file a claim that it was discovered that the suspect fan was in fact a Commander copy. Where, as in this case, there is significant evidence that the Commander copies are grossly defective and are routinely confused with genuine Broan products, this single mistaken claim taken together with the other factors testified to by Wolbrink is sufficient to allow a

jury to find that such claims are reasonably certain to occur in the future.

In summary, our review of the record convinces us that the evidence offered by Broan to establish the *fact* of its mistaken future product liability claims damages is sufficient to allow a jury to find that such claims are *reasonably* certain to occur. That is all that is required.

■ Associated argues that even if Broan showed that it will suffer some damages on account of mistaken product liability claims, Broan failed to show the amount of those future damages with any certainty. Initially, the inability to precisely determine the amount of future mistaken product liability claims is not fatal to Broan. " 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights." *Bigelow,* 327 U.S. at 265–66, 66 S.Ct. at 580 (quoting *Story Parchment,* 282 U.S. at 565, 51 S.Ct. at 251).[4] On the other hand, courts must be careful in applying the Supreme Court's modest requirements in this area lest they open the door to allow presentation to a jury of "speculation or guesswork." *Bigelow,* 327 U.S. at 264, 66 S.Ct. at 580.

Broan's proof of the *amount* of damages consisted entirely of the expert opinion testimony of David W. Wolbrink and the mathematical model he prepared. Although Rule 703 of the Federal Rules of Evidence has greatly expanded the type of information on which an expert may base his opinion, " 'that liberalization has not eliminated the requirement that an expert ground his opinion on reliable data rather than pure speculation.' " *Coal Resources, Inc. v. Gulf & Western Indus.,* 865 F.2d 761, 772 n. 4 (6th Cir.1989) (citation omitted). The defendants claim that Wolbrink's

4. In *J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981), the Supreme Court explained that its "willingness to accept a degree of uncertainty [as to the amount of damages in unfair competition cases] rests ... on the difficulty of ascertaining business damages as compared, for ex-

ample, to damages resulting from a personal injury.... [and] on the principle articulated in cases such as *Bigelow,* that it does not ' "come with very good grace" ' for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted." *Id.* at 566–67, 101 S.Ct. at 1929 (citations omitted).

testimony was replete with speculation and guesswork with no basis in fact. Although several of the assumptions on which his mathematical model rests were not supported by rigorous statistical studies, Wolbrink's estimates clearly were supported by evidence in the record along with information within the compass of his expertise. An analysis of Wolbrink's testimony concerning the amount of damages to be suffered by Broan from future mistaken product liability claims satisfies us that his testimony had adequate foundation.

Wolbrink first projected that 25% of Commander fans would fail prematurely from 1989–1996. We have no trouble with that opinion as it was based on Wolbrink's product use knowledge and the failure analysis he had performed on actual Commander bath fans. Wolbrink then estimated that 25% of the Commander bath fans that fail will "flame." That estimate seems reasonable given Wolbrink's personal knowledge of the multitude of hazardous defects contained in the Commander fans which led to his conclusion in earlier testimony that when a Commander fan failed the chances of fire were very high. Next, Wolbrink estimated that of those Commander fans that flame, 40% will be misidentified as Broan products. This estimate is supported by evidence in the record, namely the substantial evidence that Commander copies are prone to misidentification as Broan products coupled with Wolbrink's knowledge, elicited in earlier testimony, of the number of defective Commander products that had been mistaken for Broan fans and sent back to Broan. Finally, Wolbrink testified that, for 10% of the misidentified Commander products that flame, Broan will be unable to prove that they were not Broan products and thus will be subject to substantial litigation costs. He then proceeded to estimate what those litigation costs would be. Neither of these steps involved impermissible speculation. One of Wolbrink's responsibilities as vice-president of engineering for Broan was to investigate and evaluate product liability claims and his estimates were based on his personal knowledge. In addition, Wolbrink was familiar with the costs of such claims

and was responsible for estimating the expected cost of future claims to the company for purposes of financial planning.

In deciding whether this evidence establishes the amount of damages with the requisite certitude, we are mindful that " '[t]he law does not require impossibilities; and can not therefore require a higher degree of certainty than the nature of the case admits.' " *Pierce v. New York Cent. R.R.*, 409 F.2d 1392, 1398 (6th Cir.1969) (quoting *Allison v. Chandler*, 11 Mich. 542, 555 (1863)); *see also* Restatement (Second) of Torts § 912 (1977). " 'And when, from the nature of the case, the amount of damages can not be estimated with certainty ... we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit.' " *Story Parchment*, 282 U.S. at 564, 51 S.Ct. at 251 (quoting *Allison*, 11 Mich. at 555–56). Although the question is a close one, we believe that Broan's evidence of damages has been shown with as much certainty as the nature of the tort and the circumstances permit. The expert testimony offered by Wolbrink provided "a sufficient basis for the jury's computation of the damage," *Bigelow*, 327 U.S. at 266, 66 S.Ct. at 580, by "furnishing data from which the amount of the probable loss could be ascertained as a matter of reasonable inference." *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927). Finally, the jury was properly instructed that the amount of damages could not be determined by speculation or conjecture but must be based on evidence showing a reasonable basis of computation, although the results may only be approximate. Therefore, we conclude that the District Court was correct in allowing the jury to award damages for mistaken future product liability claims.

Although the award of damages for mistaken product liability claims was proper, we have no way of determining how much

of the jury award was for such claims and, therefore, we cannot affirm any particular award. Because we must remand for presentation of Broan's lost future profits theory the entire damages case must be retried.

■ One additional matter that must be addressed on retrial is that of reducing any future damages to their present value. It is elementary that in cases of present allowance for future loss a defendant is entitled to a discount to present value for the advance payment. *See, e.g., Monessen Southwestern Ry. v. Morgan*, 486 U.S. 330, 339, 108 S.Ct. 1837, 1844, 100 L.Ed.2d 349 (1988) (" '[D]amages awards in suits governed by federal law should be based on present value.' ") (quoting *St. Louis Southwestern Ry. v. Dickerson*, 470 U.S. 409, 412, 105 S.Ct. 1347, 1349, 84 L.Ed.2d 303 (1985)).

■ Finally, Associated and Republic argue that even if this Court is inclined to allow mistaken product liability claim damages, those damages should be awarded in the form of a declaratory judgment ordering an accounting of such damages as they are incurred by Broan in the future. It is true that such a remedy would seemingly eliminate the need for any projections of future claims. However, this remedy was considered by the District Court and was not adopted. The decision whether to grant a declaratory judgment and more generally the decision regarding the appropriate recovery to be afforded under the Lanham Act rests in the sound discretion of the District Court. *See* 15 U.S.C. § 1117(a); *Dresser Indus., Inc. v. Insurance Co. of North America*, 358 F.Supp. 327, 330 (N.D.Tex.), *aff'd*, 475 F.2d 1402 (5th Cir.1973). In view of the potential problems presented by such prospective relief we cannot say that the District Court abused its discretion in refusing to grant declaratory relief in lieu of present money damages.

## V.

This Court may grant a partial new trial limited to the issue of damages if damages are sufficiently separate that a new trial on

damages alone would be fair. *See Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 498–99, 51 S.Ct. 513, 514–15, 75 L.Ed. 1188 (1931); 6A Moore's Federal Practice ¶ 59.06 (2d ed. 1979). In this case the damages issues are adequately distinct from the liability questions that a new trial on damages alone is appropriate.

Accordingly, we AFFIRM the allowance of damages for future mistaken product liability claims, we REVERSE the District Court's refusal to allow evidence of lost profits damages, and we REMAND for a partial new trial on the issue of damages.