**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION.**

File Name: 06a0811n.06

Filed: November 6, 2006

**No. 05-4244**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRAD BENSON, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| v. | ) | OHIO |
| | ) | |
| CITY OF WELLSTON and JOHN STABLER, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE:     GILMAN and GRIFFIN, Circuit Judges; and GWIN, District Judge.[*]

Gwin, District Judge:

With this appeal, Defendants-Appellants City of Wellston ("Wellston") and John Stabler ("Stabler") appeal a judgment entered after a jury verdict that awarded Plaintiff Brad Benson $59,317 in compensatory damages in this action brought under 42 U.S.C. § 1983. With their appeal, Defendants challenge the determination of damages. Defendants do not challenge the jury's determination of liability. For the following reasons, we **AFFIRM** the district court's judgment.

I. Background

*A. The Parties*

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Plaintiff-Appellee Brad Benson brings this action claiming that Defendants impaired his right to free speech by ending a municipal towing contract after Benson made comments critical of Defendants. Benson is a lifelong resident of Wellston, Ohio. [Appellee's Br. at 3.] Starting in 1996, he expanded his existing automobile mechanic business to include towing services. *Id.* In that year, Defendant-Appellant City of Wellston placed Benson on the municipal towing services list. *Id.* In 1997 and 1998, Benson worked in the business full-time. *Id.* at 14. In 1999 and 2000, Benson split his work between his towing services business and logging. *Id.*

Benson remained on the City's towing services list until July 2001, when the City removed him, he argued for political reasons that eventually led to the Section 1983 lawsuit underlying this appeal. *Id.* at 5-7. As the result of his removal, Benson's towing services business declined and, in September 2002, Benson abandoned his towing operation. *Id.* at 8, 13-17.

As evidenced by his state and federal tax returns, Benson's towing and automobile repair business earned gross revenues of $38,018 In 1997, $39,180 in 1998, $27,602 in 1999, $28,317 in 2000, $17,815 in 2001, $10,421 in 2002, $884 in 2003, and $0 in 2004. [J.A. 66-183.] Defendants-Appellants stipulated to Benson's tax records before the start of the trial. [J.A. 63.]

At trial, Benson testified that his average annual operating expense for his towing business was approximately $12,387. [Appellee's Br. at 15.]. In 1997, Benson's cost of goods was $22,956 [J.A. 68]; in 1998, it was $22,990 [J.A. 84]; in 1999, the cost of goods sold was $14,973 [J.A. 101]; in 2000, the cost of goods sold was $11,447 [J.A. 115]; in 2001, the cost of goods sold was $7,313 [J.A. 127].

In 1997, Benson says he purchased a used roll-back tow truck for $14,500 for use under the

towing contract. *Id. See also* J.A. 73. Shortly thereafter, Benson spent an additional $5,000 to $6,000 to purchase and replace the truck's engine and other parts. [Appellee's Br. at 15.] Benson testified that, once the City removed him from the towing services list, he was forced to sell the roll-back truck for $10,000 in September 2002. *Id.* at 17-18. *See also* J.A. 144. Benson also testified the tow truck's market value at the time he sold it was approximately $20,000, therefore he took a $10,000 loss on the vehicle. [Appellee's Br. at 17-18.]

Defendant-Appellant John Stabler served as the mayor of the City of Wellston and was the official responsible for Benson's removal from the municipal towing services list. [Appellants' Br. at 6.] In a letter to Benson dated July 27, 2001, Stabler cited customer complaints and excessive fees as justification for Benson's removal from the list. [Appellee's Br. at 7.] Benson sued Stabler in his official and individual capacities and the jury returned a verdict and an award of $5,000 in punitive damages against Stabler.

Curiously, Appellants' Brief notes that, subsequent to the filing of this appeal, "Benson settled with Defendant-Appellant John Stabler, and the Judgment entered against Stabler has been satisfied." [Appellants' Br. at 3-4.]

### B. Procedural History

On July 17, 2003, Benson filed his complaint against the City of Wellston, Stabler, and Gary George, the City's Service Director, claiming that they had violated his civil rights by removing him from the municipal towing services list in retaliation for his public opposition to the City's municipal income tax. [J.A. 8-16.] The City answered. [J.A. 2.] After some discovery, the parties stipulated to dismissing Gary George as a defendant. [J.A. 32.]

The matter proceeded to trial. [J.A. 19.] At the close of evidence, the district court instructed the jury on the issue of damages, as follows:

Plaintiff also claims that he suffered economic damages as a result of Defendant Stabler's conduct. If you find that Defendant John Stabler improperly violated Plaintiff's First Amendment rights, you must then, but only then, determine the amount of money that will fairly and adequately compensate Plaintiff for the loss or damages that he suffered as a direct and proximate result of Stabler's actions.

You may award compensatory damages only for damages that the Plaintiff proved were proximately caused by Defendant Stabler's acts. Proximate cause is an act or failure to act which in the natural and continuous sequence directly produces damages, and without which those damages would not have occurred.

Any damages that you award must be fair – no more and no less . . ..

In this case, the damages that Plaintiff Brad Benson claims to have suffered as a result of his name being removed from the City of Wellston's towing list is a loss of business profits and other damages.

Lost profits are calculated by deciding what Plaintiff was entitled to receive had Plaintiff been permitted to remain on the towing list. From this sum, you should subtract the amount, if any, that Plaintiff saved by not being permitted to remain on the list.

The lost profits being claimed must not be remote, uncertain, or speculative. Damages are considered speculative when their existence is uncertain or when the proof is insufficient to enable you to make a fair and reasonable assessment of damages. Lost profits need not be proved with mathematical certainty, but only with reasonable certainty.

You should then add other damages, if any, suffered by the Plaintiff as a result of the removal from the list. [J.A. 21.]

Neither side objected to the district court's jury instructions. *Id.*

On April 6, 2005, the jury returned a verdict in favor of Benson on all claims, awarding him

$59,317 in compensatory damages as against the City and Stabler and $5,000 in punitive damages

as against Stabler. [J.A. 33-42.]

On April 13, 2005, the City and Stabler moved for remittitur of the jury verdict on the compensatory damages award. [J.A. 43-50.] The district court conducted a hearing on the motion on May 25, 2005. [J.A. 51.] On September 2, 2005, the district court denied the motion for remittitur. [J.A. 19-23.] On September 30, 2005, the Defendants-Appellants filed their notice of appeal of the district court's September 2 Order. [J.A. 24-25.]

## II. Legal Standard

Defendants-Appellants challenge the sufficiency of the evidence presented at trial to support the jury's award of $59,317 in compensatory damages awarded to Benson. In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the plaintiff. *Molton v. City of Cleveland*, 839 F.2d 240, 241-42 (6th Cir. 1988), *cert. denied*, 489 U.S. 1068 (1989). Damages must be established to a reasonable certainty, but the existence of some uncertainty as to the amount of damages does not foreclose recovery. *See Broan Mfg. Co., Inc. v. Associated Distribs., Inc.*, 923 F.2d 1232, 1236 (6th Cir. 1991). "It has long been recognized that once the fact of damage has been properly shown, uncertainty as to their amount will not foreclose recovery." *Blue Diamond Coal Co. v. United Mine Workers of Am.*, 436 F.2d 551, 561 (6th Cir. 1970) (citations and internal quotations omitted). Nor is it especially worrisome that an element of uncertainty might have had an effect on the calculation of damages; to the contrary, calculations of future damages necessarily must rest upon a degree of prediction. *See Shore v. Fed. Express Corp.*, 42 F.3d 373, 378 (6th Cir. 1994). The cases do not require "lost profits" to equate to taxable income.

We review a district court's denial of a motion for remittitur for an abuse of discretion.

*Roush v. KFC Nat'l Mgt. Co.*, 10 F.3d 392, 397 (1993), *cert. denied*, 513 U.S. 808 (1994). District courts should grant such motions only "if the award clearly exceeds 'the amount which, under the evidence in the case was the maximum that a jury could reasonably find to be compensatory' for the plaintiff's loss." *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988) (citation omitted). "Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, . . . or (3) the result of a mistake, we must let the award stand." *Leila Hosp. & Health Ctr. v. Xonics Med. Sys.*, 948 F.2d 271, 278 (6th Cir. 1991).

### III.  Analysis

Plaintiff-Appellee Benson presented sufficient evidence for the jury to award him $59,317 in compensatory damages.

At trial, Benson produced evidence indicating that his tow truck business produced annual gross revenues of nearly $40,000 in 1997 and 1998, the two years in which he operated it full-time. Benson's revenues from his towing business dropped off significantly after the City removed him from the municipal towing services list. Benson provided this evidence through his own testimony, as well as documentary evidence in the form of his state and federal tax returns. Defendants-Appellants did not object to Benson's tax records; in fact, they stipulated to them before the trial.

Benson's tax records include the $14,500 cost basis for the roll-back truck and its eventual sale price of $10,000. Benson also testified that he had made considerable improvements to the truck and that he considered it to be more valuable when he was forced to sell it than it was when he purchased it.

Benson's testimony, state and federal tax records, and Defendants-Appellants' agreement as

to the validity of the tax records form a sufficient evidentiary basis from which the jury could appropriately determine Benson's compensatory damages award, if any.

Further, the district court did not abuse its discretion in denying Defendants-Appellants' motion for remittitur.

Benson's average annual revenue from 1997 to 2000 was approximately $33,279. After the City removed him from its municipal list, Benson's average annual revenue from his towing business dropped to approximately $7,280 from 2001 to 2004. Thus, a reasonable estimate of Benson's average foregone annual revenue from his towing business is approximately $25,999 from 2001 to 2004, or approximately $103,996 over the four year period.

Benson also testified that his average annual operating expense for his towing business was approximately $12,387. This equates to an estimate of approximately $49,548 over the four year period of 2001 to 2004.

Subtracting the estimated four-year operating expenses from the estimated four-year revenues results in an estimated foregone profit of $54,448. The $59,317 compensatory damage award is thus not beyond the range supportable by the proof, not the result of a mistake, nor so excessive as to shock our conscience. See *Leila Hosp. & Health Ctr.*, 948 F.2d at 278.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's order denying Defendants-Appellants' motion for remittitur.