**GALT HOUSE, INC., Appellant,**

v.

**HOME SUPPLY COMPANY and
Al J. Schneider, Appellees.**

Court of Appeals of Kentucky.

May 12, 1972.

Howard B. Hunt, Sr., Maurice L. Miller, Jr., Hunt & Miller, Louisville, for appellant.

Robert L. Ackerson, Richard D. Remmers, Ackerson, Ackerson & Remmers, Louisville, for appellees.

REED, Judge.

The plaintiff, Galt House, Inc., instituted this action to enjoin the defendants, Home Supply Company, and its principal officer and stockholder, Al J. Schneider, from operating a new hotel in Louisville, Kentucky, under the assumed trade name "Galt House." The trial judge refused to enjoin the use of the name at the plaintiff's behest. We affirm that decision for the reasons later discussed. No other issue involved in the pending litigation in the trial court is decided. We confine our consideration to the sole issue presented by this appeal.

In February 1964, the plaintiff, Galt House, Inc., incorporated under the laws of this state. In its articles of incorporation it adopted as its corporate name the term "Galt House." The articles required and specified that the minimum capital with which plaintiff would commence business would be the sum of $1,000. This amount has never been paid in. The plaintiff has no assets and no liabilities; neither does it have corporate books or records. Plaintiff's president and sole shareholder is Arch Stallard, Sr., a real estate broker in Louisville, Kentucky, who specializes in hotel and motel real estate. Mr. Stallard has on occasions since the date of the filing of plaintiff's articles of incorporation made a few sporadic inquiries concerning possible locations for a hotel and considered engaging in an enterprise by which a franchise operation would be effected. These few efforts came to naught and Mr. Stallard testified that because of illness and death in his family he had been "laying dormant."

The defendant, Home Supply Company, is a Kentucky corporation organized sometime prior to 1950. The defendant, Al J. Schneider, is its president and controlling shareholder. Home Supply Company is active in the business of constructing and operating hotels in this state. It presently operates a hotel on the Kentucky State Fair Board property under the assumed name "Executive Inn." It is presently engaged in the construction and completion of a high-rise hotel on riverfront-development property belonging to an agency of the City of Louisville.

In April 1969, Home Supply Company, through its president Schneider, submitted to the city agency plans of a hotel bearing the name Galt House. This name had been recommended to Schneider by the then mayor of the City of Louisville, Kenneth Schmied, and the chairman of the Riverfront Development Commission, Archibald Cochran. The trial judge found from the evidence that throughout discussions leading up to the bidding, the new hotel was referred to as the Galt House and has been so referred to since. Home Supply Company was the successful bidder, was awarded the contract, and construction commenced in May 1970. A new hotel, 26 stories in height with 714 rooms, is now nearly completed and has affixed a sign bearing the name "The Galt House." The hotel already has scheduled future conventions and room reservations, although it will not open until after May 1972. In April 1971, Home Supply Company applied for and received from the Secretary of State of Kentucky a registration and service mark of the name "The Galt House."

Plaintiff filed suit in August 1971, seeking to enjoin the defendants from any use of the name Galt House. Evidence was taken in the form of depositions and written interrogatories. In February 1972, the trial judge entered a judgment that was

made final for purposes of appeal (CR 54.-02); the judgment was based on findings of fact and conclusions of law set forth in two written opinions. The trial judge concluded in substance that the plaintiff did not by mere incorporation acquire property rights in the name "Galt House" and that the plaintiff had not performed sufficient acts since incorporation to acquire property rights in and to that name. Accordingly, the trial judge reasoned that the plaintiff was not entitled to injunctive relief against the defendants' use of the contested name. Plaintiff then appealed to this court and asserts several grounds on which it bases its contention that the trial court was in error in not granting it an injunction against the defendant. We shall deal with these contentions subsequently herein, but first a bit of history of the particular name that is the subject of controversy will be briefly related.

During the Nineteenth Century the Galt House Hotel was a famous hostelry in Louisville with an excellent and widely recognized reputation. In 1838 the barroom at the Galt House was the scene of a killing as a result of which an attorney and judge and his two companions were indicted for murder. They were tried and acquitted. The trial was held at Harrodsburg, Kentucky, to which venue had been transferred because of the intense public sentiment in Louisville against the defendants who were prominent citizens of Mississippi. The victims of the affray were Louisville residents. The trial itself is famous in the annals of Kentucky history.

In 1842 Charles Dickens toured America. In his account in *"American Notes,"* he was characteristically uncomplimentary in his description of Louisville; he was impressed, however, with the Galt House. He wrote: "We slept at the Galt House; a splendid hotel; and were as handsomely lodged as though we had been in Paris, rather than hundreds of miles beyond the Alleghanies (sic)." In 1858 Charles Mackay, an English writer, passed through Louisville. In his account in *"Life and Liberty in America"* he remarked: ". . . we crossed in the steamer to Louisville, and once more found ourselves in a land of plenty and comfort, in a flourishing city, in an excellent hotel—the Galt House, one of the best conducted establishments in America; . . . ."

The Galt House, located on Main Street at Second Street, occupied separate buildings during its existence as a hotel. The second Galt House was destroyed by fire in January 1865 at a reported loss of $1,000,000. The third Galt House, a magnificent structure in its day, was abandoned as a hotel and ceased operations in 1920. Belknap Hardware Company thereafter occupied the site of the last Galt House.

Thus, it would appear that since 1920 there has been no use of the name Galt House in connection with or to describe a hotel. The name doubtless strikes interest when used in the presence of history buffs and among those familiar with the folklore of Louisville. Among such cognoscenti the name encourages remembrance of things past.

As found by the circuit judge, the corporation which operated the last Galt House was formed in 1911 and its formal corporate existence expired in 1961. From 1920 to 1961, however, it did not engage in the hotel business. Therefore, the name Galt House had not been used in connection with a going business for 49 years when defendants undertook to use it as the name of their new hotel in 1969.

██ The primary argument asserted by the plaintiff actually rests upon a premise that by mere incorporation under a corporate name it retains the right to exclude others from the use of that name so long as the corporation legally exists. In Covington Inn Corp. v. White Horse Tavern, Inc., Ky., 445 S.W.2d 135 (1969), we considered the effect of KRS 271.045, a part of the corporation law of this state, and held that its provision that a corporate

name shall not be the same as "nor deceptively similar to" the name of other corporations, constituted an expression by the legislature that stated a policy conforming to the common law of "unfair competition" as applied in Kentucky. Thus, when under subsection (4) of the same statute an equity action is authorized to enjoin the doing of business under a name adopted in violation of this statute, the common law of unfair competition prescribes the standards which the court applies in determining whether to enjoin.

■ In that same opinion we remarked that perhaps this statute could be reasonably construed to extend to an assumed name of a corporation. That is the situation in this case. The defendant Home Supply Company has undertaken to do business under the assumed trade name Galt House, which is the same as plaintiff's adopted corporate name. In Meredith v. Universal Plumbing & Construction Co., 272 Ky. 283, 114 S.W.2d 94 (1938), we held that under our corporate statutes and other statutory laws applicable to transacting business under an assumed name there was no legal impediment to a corporation using an additional trade name that was different from its adopted corporate name. The pertinent statutes read the same now as they did then. Hence, there is no legal impediment to the defendant Home Supply Company's adoption of the trade name "Galt House", unless the plaintiff by the mere act of incorporation of the same name has precluded this defendant's right to adopt and use the name.

■ Surely the plaintiff acquires no standing to enjoin under the accepted principles of the law of unfair competition. Under the modern extended scope of the doctrine of unfair competition, its present outer limits afford protection and relief against the unjust appropriation of, or injury to, the good will or business reputation of another, even though he is not a competitor. Plaintiff is concededly a nonuser of the contested name. Plaintiff has no

customers, conducts no real or substantial business and has never held its name out to the public in connection with any going business. Therefore, by its inaction, it could not have established either a good will or reputation which the defendants could be legitimately accused of pirating as a competitor or otherwise. Therefore, if plaintiff has standing to enjoin, its status must rest upon the acquisition of a protectable right by its act of incorporation under the contested name.

In Lawyers Title Ins. Co. v. Lawyers Title Ins. Corporation, 71 App.D.C. 120, 109 F. 2d 35 (1939), Mr. Justice Rutledge, writing for the Circuit Court of Appeals for the District of Columbia, considered the problem. This opinion is characterized by Fletcher as a leading case. See Volume 6, Fletcher Cyc. Corp. (1968 Perm.Ed.), Sec. 2425, page 55. That case and the prior case of Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142 (1914), established clearly that mere incorporation under a particular name does not create the right to have such name protected against use by another. Mr. Justice Holmes said in Waterman:

> "While it very well may be true that the transfer of a name without a business is not enough to entitle the transferee to prevent others from using it, it still is a license that may be sufficient to put the licensee on the footing of the licensor as against the plaintiff."

■ The plaintiff, however, relies upon the case of Drugs Consolidated v. Drug Incorporated, 16 Del.Ch. 240, 144 A. 656 (1929). In our view the opinion in that case undertakes to prove too much. There is dictum that the corporation statutes of Delaware, which are substantially similar to the corporation statutes of Kentucky so far as the present point is concerned, assure a right to have the corporate name distinguished from other corporations of like kind subsequently created and that this right does not depend on showing of actual use, in business, of the name, but the right exists as

soon as corporate existence is brought into being and as long as it continues; the specific factual findings in the opinion, however, demonstrate that the plaintiff corporation, although it was not yet actually engaged in the business of manufacturing and marketing drugs, had, nevertheless, been engaged in promoting the objects and purposes of its incorporation. Therefore, if this opinion represents a holding that a nonuser of a corporate name retains the right to pre-empt that name during the period of its formal corporate existence without ever having engaged in carrying on any of the objects and purposes of the corporation, it is contrary to the weight of authority concerning that proposition and does not, in our opinion, represent the generally accepted view.

The Drugs Consolidated opinion was cited with approval by the Mississippi Supreme Court in Meridian Yellow Cab Co. v. City Yellow Cabs, 206 Miss. 812, 41 So.2d 14 (1949). In this case, however, the plaintiff who first incorporated had actually commenced operations at the time it sought to enjoin the defendant who had later incorporated under a similar name. Although the plaintiff did not commence business until after the defendant, it, nevertheless, did actually start active operations in the taxicab business within three years of the date of its incorporation and within two months after the defendant actually operated taxicabs; whether the plaintiff was theretofore engaged in activities to promote the objects and purposes of the corporation is not mentioned. However misplaced that court's reliance on the Drugs Consolidated case may have been, its decision, which granted the plaintiff injunctive relief, does not militate against our conclusion in this case that the plaintiff's act of incorporation in a particular name pre-empts the use of that name by a subsequent user only for a reasonable period in which to allow plaintiff's business to begin. To this extent, incorporation and registration take the place of user in the case of a trade name. Pre-emption for a

reasonable period of time in which to allow the business to begin is not the equivalent of a perpetual monopoly of the trade name without use in trade. See Lawyers Title Ins. Co. v. Lawyers Title Ins. Corporation, supra. Upon this rationale, the case of Pacific Northwest Bell Telephone Co. v. Rivers, 88 Idaho 240, 398 P.2d 63 (1964), also cited by plaintiff, is readily distinguishable from the instant case.

In Duff v. Kansas City Star Company, 299 F.2d 320, (C.A. 8 1962), the court held that there is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade with which the mark is employed. This principle was applied to the trade name of a newspaper which had not been published for eight years. The court decided that since there was no established business (good will) to which the contested name attached, the plaintiff had no right to prevent another from using the name in an active, going business. The court pointed out that the contested name was not in and of itself a valid, copyrightable name. It was no more than the common name of a once-published newspaper.

In American Photographic Pub. Co. v. Ziff-Davis Pub. Co., 127 F.2d 308, 29 C.C. P.A. 1014 (1942), it was held that where the plaintiff for over twenty years had failed to make use of the trade name "Popular Photography" for a separate magazine but had merely used the term on the masthead of another magazine called "American Photography," no good will could have attached and the plaintiff had no standing to prevent a subsequent user from calling its magazine "Popular Photography."

We are also unable to find that plaintiff has any standing to enjoin under the theory that it was placed on the same footing with the former Galt House Corporation whose existence expired by operation of law in 1961. There was no transfer of the name from the expiring Galt House Corporation to plaintiff. The former Galt House Corporation at the end of

its corporate term of existence as fixed by its articles terminated its right to do business in 1961. It had not engaged in the hotel business under its corporate name since 1920. The former Corporation was incapable of possessing a business with a good will or a corporate trade name. The name did not survive, for there was nothing to which it could be attached. See Grand Rapids Trust Co. v. Haney School Furniture Co., 221 Mich. 487, 191 N.W. 196 (1922), which is discussed in 27 A.L.R. at page 1031.

In the instant case, the plaintiff possessed neither good will nor a reasonable prospect to acquire it. Its right to preempt the name by the mere act of incorporation had expired because a reasonable period in which to allow business to begin had passed and the plaintiff neither alleged nor could show reasonable prospect to acquire good will through actively engaging in business. See Lawyers Title Ins. Co. v. Lawyers Title Ins. Corporation, 109 F.2d 35 (C.A.D.C.1939).

Fletcher Cyc. Corp. (1968 Perm.Ed.), Sec. 2425, page 54 states: "Mere incorporation under a particular name does not create the right to have such name protected against use by another, . . .." The elements of unfair competition are absent because there can be no public confusion between existing businesses nor is there any infringement upon the good will and reputation of a going business.

■ The plaintiff's secondary argument is that the defendant secured an invalid registration of the trade-name under KRS 365.560 and 365.565. We do not consider this objection relevant in the circumstances of this case. The question here is not whether defendants rely upon statutory registration of the name to prevent its use by another; the issue is whether the plaintiff has standing to prevent the defendants from using the name by means of the injunctive process. It seems that valid statutory registration might well aid in protecting defendants from subsequent users, if

defendants would become involved in such a controversy. Invalid registration, as such, could probably not aid in protecting defendants in a controversy between them and a subsequent actual user, particularly where defendants were in the position of a nonuser when the controversy arose. Those matters, at this point, are purely speculative and we, of course, express no definitive opinion concerning them. Our discussion is merely to illustrate that we are not testing the right of the defendants against an actual user of the name. KRS 365.625 provides that the registration statutes do not affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law.

We must only determine whether the plaintiff has the right to prohibit the defendants from using the name. We agree with the trial judge that the plaintiff has no standing to enjoin the use of the name by the defendants under the facts of this case.

The judgment from which the appeal was prosecuted is affirmed.

All concur.