**ADVANCE STORES COMPANY, INCORPORATED, d/b/a Advance Auto Parts and Laralev, Inc., Plaintiffs and Counter–Defendants,**

v.

**REFINISHING SPECIALITIES, INC. d/b/a NAPA and Advance Auto Parts, Defendant.**

Civil Action No. C–95–93–L(H).

United States District Court, W.D. Kentucky, Louisville.

Nov. 25, 1996.

K. Gregory Haynes, Deborah H. Patterson, Wyatt, Tarrant & Combs, Louisville, KY, Robert DeVos, B. Parker Livingston, Jr., Bassam N. Ibrahim, Burns, Doane, Swecker & Mathis, L.L.P., Alexandria, VA, for plaintiffs.

Jack A. Wheat, Joel T. Beres, Wheat, Camoriano, Smith & Beres, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This Court has before it Plaintiffs' Motion for Summary Judgment and Defendant's Motion for Partial Summary Judgment on the issues of Likelihood of Confusion and Territoriality. This case arises out of the parties' dispute about ownership rights to the name, "Advance Auto Parts." Defendant had the prior use in Kentucky. Plaintiffs neither filed a federal trademark registration nor used the mark in Kentucky until many years after Defendant did. The pending motions require the Court to apply the well-known criteria for determining likelihood of confusion and to clarify the less understood law of territorial rights in these circumstances.

### I.

Plaintiff Advance Stores Company, Incorporated d/b/a Advance Auto Parts ("Plaintiff Advance") is in the business of operating retail auto parts stores. Plaintiff Laralev, Inc. ("Plaintiff Laralev") is a wholly-owned subsidiary of Plaintiff Advance and owns the trademarks used by Plaintiff Advance pursuant to a license agreement between the two parties. In 1932, Plaintiffs opened up a retail automobile parts business in Virginia which they called Advance Stores. Over the years, Plaintiff modified the name to Advance Stores Company. In the 1970's, Plaintiff adopted the name "Advance Auto." Finally, in 1984, Plaintiff starting using "Advance Auto Parts." Plaintiff Advance currently operates retail auto parts stores under the name "Advance Auto Parts" and sells auto parts under its "Advance Auto Parts" mark.

Meanwhile, in Louisville, Kentucky, Defendant Refinishing Stores, Inc. d/b/a NAPA and Advance Auto Parts ("Defendant") opened a retail automobile parts store under the name "Advance Auto Parts" in 1974. Defendant is a retailer of NAPA automobile parts, but also sells items which are not NAPA branded. Much of Defendant's advertising is paid for by NAPA, which seeks to promote its own name and makes heavy use of the NAPA logo. In 1982, Defendant opened a second store in Jeffersontown, Kentucky and in 1994, Defendant opened a third store in Louisville.

Plaintiff Laralev federally registered "Advance Auto Parts" and the related design under the Lanham Act in April 1988. In 1992, Plaintiff Advance qualified to do business in Kentucky by filing an assumed name certificate for "Advance Auto Parts." It recorded a certified copy of its assumed name certificate in Jefferson County, Kentucky and opened stores in Prestonburg and Paintsville

(both in eastern Kentucky).[1] In August 1993, Plaintiff Advance began looking for sites in Louisville. It noticed a NAPA truck with "Advance Auto Parts" on it and confirmed Defendant's use of the name.

In November 1993, Defendant applied to Kentucky for use of "Advance Auto Parts" as an assumed name. In January 1994 and July 1994, Plaintiffs federally registered modified versions of "Advance Auto Parts." In September 1994, Defendant registered "Advance Auto Parts" as its service mark. In October 1994, Defendant sought to cancel Plaintiffs' two most recent registrations.

Defendant has filed a petition with the United States Patent and Trade Office seeking to cancel Plaintiffs' last two federal registrations of the mark, under the Lanham Act, 15 U.S.C. § 1051 *et seq.* In response, Plaintiff seeks declaratory and injunctive relief on the following issues: (1) Plaintiffs are not infringing on Defendant's proprietary rights claimed by Defendant, (2) Plaintiffs are entitled to use their mark in Kentucky, except in Jefferson County, (3) Plaintiffs' two recent federal service mark registrations should not be canceled under the Lanham Act, and (4) Defendant's 1994 Kentucky service mark registration should be canceled. Defendant counterclaims on a number of related issues. The Court now addresses all three motions.

Defendant's rights to the disputed mark, "Advance Auto Sales," is central to all three motions. Before considering the individual claims of the parties, the Court must first determine: (1) whether Defendant has proprietary rights in "Advance Auto Parts," and (2) the geographical extent of any proprietary rights Defendant may have.

## II.

■ Plaintiffs argue that Defendant has no ownership rights in "Advance Auto Parts" because it does not use the name as a trademark. However, even if Defendant has been using "Advance Auto Parts" as a trade name, it receives the same protection under federal law.[2] According to the United States Supreme Court:

> Whether the name of a corporation is to be regarded as a trademark, a trade-name, or both, is not entirely clear under the decisions. To some extent the two terms overlap ... [b]ut the precise difference is not often material, since the law affords protection against its appropriation in either view, upon the same fundamental principles.

*American Steel Foundries v. Robertson,* 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926). The Sixth Circuit adopted this holding in *Victor Tool & Machine Corp. v. Sun Control Awnings, Inc.,* 299 F.Supp. 868, 875 (E.D.Mich.1968), *aff'd,* 411 F.2d 792 (6th Cir. 1969) (quoting *American Steel Foundries v. Robertson* ).[3] The only meaningful legal distinction between trademarks and trade names is that Defendant could not federally register "Advance Auto Parts" if it were indeed a trade name. *Accuride Int'l, Inc. v. Accuride Corp.,* 871 F.2d 1531, 1534 (9th Cir.1989). Defendant can assert an action for infringement of a trade name under the Act. *Id.* at 1534–35. In addition, a trade name may bar registration of a mark that is confusingly similar to it. *Martahus v. Video*

---

1. Plaintiff Advance has since opened a number of other retail stores throughout Kentucky, but not in Jefferson County.

2. Defendant has no problem proving its use of "Advance Auto Parts" as a trade name. "[T]o establish trade name identification, an 'organization need only to have used a name or acronym in a manner that identifies the company by that name or acronym to the public ... no particular formality of adoption or display is necessary to establish trade name identification.'" *Martahus v. Video Duplication Services, Inc.,* 3 F.3d 417, 422 (Fed.Cir.1993) (quoting *National Cable Television Assoc. v. American Cinema Editors, Inc.,* 937 F.2d 1572, 1577 (Fed.Cir.1991)).

3. Plaintiffs cite to this case as support for their proposition that a designation must be used in the "trademark sense" in order to secure rights in its use. However, the court in *Victor Tool & Machine* uses "trademark sense" as distinguished from the "descriptive or advertising sense." *Id.* at 871. The court held that the plaintiff's rights were inferior to the defendant's because the plaintiff merely used the disputed phrase, "Sun Control," to describe its aluminum awnings, while the defendant used it to distinguish and identify its own products. Contrary to Plaintiffs' implication in their Reply Brief, the court did not distinguish between the use of "Sun Control" as a trademark and trade name.

*Duplication Services, Inc.*, 3 F.3d 417, 421 (Fed.Cir.1993).

Though trade names are protectible under trademark law, Defendant still must establish that its own trade name is protected. To do this, Defendant must show actual use and likelihood of confusion. Defendant uses "Advance Auto Parts" on its business checks, invoices, credit card receipts and correspondence. In addition, Defendant has placed its trade name on some of its delivery trucks and on its store sign. This is sufficient evidence of actual use.

### III.

Defendant's proprietary rights to "Advance Auto Parts" do not exist in the name itself, but in Defendant's right to prevent confusion among its customers. *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 919 (9th Cir.1980); *see also Little Caesar Enterprises, Inc. v. Pizza Caesar Inc.*, 834 F.2d 568, 570 (6th Cir.1987). This principle applies to trade names as well as trademarks. *Laboratories, Inc. v. Halvorson TutorTape*, 155 USPQ 268, 270 (TTAB 1967). The question of whether there is a likelihood of confusion between two marks is one of mixed law and fact to which courts have traditionally applied federal law. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.1991).

The Sixth Circuit has set forth a "digits of confusion" test which delineates eight factors "helpful in demonstrating that there is a likelihood of confusion among consumers." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982). The factors are: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines. *Id.* Considering all these factors, the Court finds a likelihood of confusion between Plaintiff's and Defendant's marks.

#### A. *Strength of the Mark*

Inherent distinctiveness and marketplace recognition are important factors bearing on the strength of a trade name. *Homeowners,*

931 F.2d at 1107. Depending on whether the name is "generic," "descriptive," "suggestive" or "arbitrary or fanciful," the user may or may not have to show secondary meaning.

Generic terms are those which are commonly used to name or describe a kind of goods; descriptive terms specifically describe a characteristic of the good; suggestive terms suggest rather than describe the goods; and arbitrary or fanciful terms have no apparent connection to the goods at all. *Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362–63 (6th Cir.1984). The first two types require a showing of secondary meaning to be protectible; the latter two do not. *Id.* The latter terms are deemed more inherently distinctive than former ones.

As the court noted in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." 537 F.2d 4, 11 (2d Cir.1976). *Accord Wynn Oil Co. & Classic Car Wash, Inc. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir.1988). *See also* J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11.05(3), at 11–23 (3d ed.1996) [hereinafter *McCarthy* ].

In this case, "Advance" conveys a notion about the quality of Defendant's auto supplies—that they are superior to those of its competitors. Somewhat like the use of "superior" in a name, it "connotes an aura of superior grade merchandise and lends a psychological impression of quality." *McCarthy* § 11.03(3), at 11–12 (concluding that "superior" will probably be classified as descriptive). Marks that describe the alleged merit of a product are also regarded as descriptive. *Id.* § 11.05[2][b], at 11–22. Though "Advance" seems less directly descriptive than "superior," the Court concludes that, as used by Defendant, it does convey a sufficient idea of quality to be descriptive under trademark law.

Even though this Court believes that "Advance" is descriptive, Plaintiffs' own certifi-

cates of federal registration indicate that it is a suggestive mark. Where the U.S. Patent and Trademark Office ("PTO") deems a proposed mark descriptive, the certificate of registration bears a statement issued pursuant to § 15 U.S.C. § 1052(f) that although a mark is descriptive, an applicant may offer evidence that the mark "has become distinctive of the applicant's goods in commerce." None of Plaintiffs' certificates of registration bear that statement. Implicitly, therefore, the PTO seems to have found that the mark was not descriptive.

The Sixth Circuit gives substantial deference to PTO determinations. In *Wynn,* 839 F.2d at 1190, the court accepted the PTO's findings that the CLASSIC mark was strong enough to be registered, explaining that "unless the defendant can introduce evidence to rebut the presumption of the marks' validity, we will accept the conclusion of the agency which is entrusted with the duty of administering the Lanham Act, and which is undoubtedly expert in these matter." *See also Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1534 (4th Cir.1984). Therefore, this Court finds that "Advance Auto Parts" is suggestive and, as an important consequence, requires no proof of secondary meaning.

Although Defendant has shown inherent distinctiveness, it has not shown that its use of "Advance Auto Parts" is distinctive in the marketplace (i.e., readily recognizable by its customers). Marketplace distinctiveness also is used in assessing the strength of a mark. *Homeowners,* 931 F.2d at 1107. Plaintiffs offer a survey of Defendant's customers indicating that they know Defendant as a NAPA dealer, rather than as "Advance Auto Parts." However, Defendant has produced checks and correspondence showing that at least some of its customers do recognize it as "Advance Auto Parts." In addition, Defendant would not have listed its store as "Advance Auto Parts" in the telephone directory if it did not believe its customers could identify it by that name. Even so, Defendant's name does not seem very strong. Though technically distinctive, the mark has questionable distinctiveness in the marketplace.

### B. *Relatedness of the Goods*

Both parties sell auto parts and supplies. For the purposes of this motion, Plaintiffs do not dispute that the goods of each party are sufficiently similar so as to cause a likelihood of confusion.

### C. *Similarity of the Marks*

Plaintiffs and Defendant are trying to use the same set of words: "Advance Auto Parts." However, Plaintiffs argue that (1) the use of the NAPA logo with "Advance Auto Parts" distinguishes the two parties' use of the name and (2) the color and style of "Advance Auto Parts" as used by Plaintiffs is easily distinguishable from the plain block print Defendant uses to advertise its name.

As to the first argument, if the mere use of a disputed trademark with another mark precluded a showing of likely confusion, a user would never be able to establish rights in two different marks; yet, it is clear that a user can do so. *See Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 154 (6th Cir.1973). Therefore, Plaintiffs must go further than merely showing that the disputed mark is used in conjunction with another mark.

Their second argument is stronger. Plaintiffs use "Advance Auto Parts" in conjunction with a blue and red logo. The words constantly appear with the logo; they are linked with the logo in customers' minds. Defendant's customers are less likely to be confused by Plaintiffs' use of the words when they see the stylistic manner in which Plaintiffs present them. Similarly, Plaintiffs' customers are likely to look for the blue and red logo when searching for Plaintiffs' store. *See Homeowners,* 931 F.2d at 1109 ("[T]he marks must be viewed in their entirety and in context.... It is the overall impression of the mark, not an individual feature, that counts."). However, while it may be true that anyone familiar with either mark is unlikely to confuse the two, it would not be unreasonable for others to confuse them. The fact that both use the same name makes it likely that unsuspecting customers will be confused.

#### D. *Evidence of Actual Confusion*

■ Defendant argues that many of Plaintiffs' customers have requested service from Defendant on parts sold by Plaintiffs. In addition, according to Defendant, government agencies and vendors have confused the two parties. However, Defendant makes no claim that its own customers are confused. "[A]s important as the number of instances of confusion are the kinds of persons confused and degree of confusion." *Homeowners*, 931 F.2d at 1110.

Here, the confusion is easily explained. Consequently, it is short-lived. Further, the customers Defendant claims are confused are those casually, if at all, acquainted with Defendant's business. As the Sixth Circuit explains: " 'Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight.' " *Id.* (quoting *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982)). *See also Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135 (Ky.1969) (holding that some public confusion and inconvenience do not rise to the level of unfair competition). Therefore, even though Defendant has pointed to some instances of actual confusion, the type of confusion asserted is of little weight in determining the likelihood of confusion.

#### E. *Marketing Channels Used*

Defendant and Plaintiffs use similar marketing channels. Both sell auto parts to customers who wish to repair their own vehicles. Both advertise in print and radio media and are listed in telephone directories as "Advance Auto Parts." Although Plaintiffs argue that Defendant does not really use "Advance Auto Parts" in its advertising and directory listings, the exhibits Defendant has submitted have shown that Defendant does use "Advance Auto Parts," albeit at times with the NAPA logo.

#### F. *Likely Degree of Purchaser Care*

Plaintiffs and Defendant argue over the degree to which customers will make an effort to ensure that they are going to the correct "Advance Auto Parts" store. Defendant says that since auto parts are relatively inexpensive, customers will exercise little care, thus making confusion more likely. Plaintiffs counter that their customers are extremely price conscious and are willing to exercise great care to obtain the best price.

Price consciousness and willingness to shop around do not necessarily determine purchaser care. In fact the willingness of auto supplies customers to change from one brand to another based on price differences may indicate little purchaser care in choosing the right brand name. Finally, although Plaintiffs argue that Defendant would not have put so much effort into name recognition if customers exercised a low degree of care, it should be noted that all vendors attempt to establish name recognition, regardless of the care their customers take in choosing a merchant. *Frisch's*, 670 F.2d at 648.

#### G. *Defendant's Intent in Selecting the Mark*

■ While a showing of intentional infringement on the part of Plaintiffs is not necessary to show a likelihood of confusion, it would help to find it. *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 602 (6th Cir.1991). Here, Defendant makes no showing of intentional infringement. At most, it claims that it has created an inference of intentional infringement. It is questionable whether Defendant has even raised an inference. Territorial infringement is a disputed issue in this case. The mere fact that Plaintiffs knew that Defendant was using "Advance Auto Parts" in Jefferson County does not support a finding of intentional infringement when Plaintiffs opened store at the other end of the state.

#### H. *Conclusion*

■ Taking all of these factors into consideration, the Court concludes that Defendant has shown a sufficient likelihood of confusion between its name and Plaintiffs' mark. The trade name "Advance Auto Parts" is suggestive and inherently distinctive and it has some market recognition. The goods are similar and the marks are substantially similar. The parties use the same marketing channels and the customers are unlikely to use a high degree of care in selecting between the two vendors. The actual confusion

to date is not only limited, but also relatively inconsequential because it is easily remedied. Nevertheless, if both parties were to use "Advance Auto Parts" in the same region, confusion seems likely, given the above findings. There seems to be enough potential for confusion to afford Defendant the right to protect its trade name. The more important issue is the territorial extent to which Defendant may exercise that right.

## IV.

■ Once Defendant establishes its rights in "Advance Auto Parts," by virtue of its showing a likelihood of confusion between its name and Plaintiffs' trademark, the Court must determine the territorial extent of those rights. Plaintiffs have federally registered their mark, "Advance Auto Parts." While a federal registration grants the registrant nationwide rights in its mark, Section 15 of the Lanham Act preserves the common law rights of a prior user of that mark. 15 U.S.C. § 1065. According to Plaintiffs' 1988 application for federal registration, which stated that they first used "Advance Auto Parts" on March 3, 1984, Defendant is the senior user and Plaintiffs are the junior users of "Advance Auto Parts." [4] *See* Section V for a fuller discussion. While few can seriously dispute that Defendant's rights were frozen upon the date of Plaintiffs' registration; con-

siderable dispute clouds the territorial extent of those rights.

## A.

■ The language of § 1065 explicitly states that the registrant's incontestability is limited to the extent that the prior user (i.e., Defendant) has valid rights "acquired under the law of any state or Territory by use of a mark or trade name." 15 U.S.C. § 1065. Although the language seems to direct courts to state law, courts often have applied what seems to be a body of federal common law in determining the prior user's rights. *See, e.g., Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir.1985) (using other federal court common law opinions for determining the rights of a senior user after a junior user has registered); [5] *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 523–24 (CCPA 1980) (using criteria set forth by the CCPA in *In re Beatrice Foods Co.*, 57 CCPA 1302, 429 F.2d 466, 475 (1970) in determining what rights a prior user had vis-a-vis a junior registrant); *Wrist–Rocket Manufacturing, Co. v. Saunders Archery Co.*, 578 F.2d 727, 731–33 (8th Cir.1978) (relying on an earlier Eighth Circuit case for its determination of what common-law rights the prior user had at the time of registration).

Defendant argues in favor of this approach. It says that the Sixth Circuit has its own common law test for determining a

---

4. This determination could make a difference. If Defendant is the senior user, 15 U.S.C. § 1065 would apply. According to that section, once five years have passed since the date of registration, the junior registrant's rights become incontestable, *except* "to the extent, if any, to which the use of a mark registered on the principal register *infringes a valid right acquired under the law of any State or Territory by use* of a mark or trade name continuing from a date prior to the date of registration." 15 U.S.C. § 1065 ("Incontestability of right to use mark under certain conditions") (emphasis added).

If Defendant were the junior user, 15 U.S.C. § 1115(b)(5) ("Incontestability; defenses") would apply. The language in § 1115(b)(5) refers to situations where the mark "was adopted without knowledge of the *registrant's* prior use," (emphasis added), that is, situations where the party defending against the registrant's incontestability is the junior user. *See Wrist–Rocket Manufacturing Co. v. Saunders Archery Co.*, 578 F.2d 727, 731 (8th Cir.1978) (explaining that

§ 1115(b)(5) applies to situations in which "a common-law owner['s] ... use antedated the registration but post-dated the registrant's use in other areas").

Despite obvious differences in Sections 1065 and 1115(b)(5), some courts seem to apply them interchangeably. The Eighth Circuit in *Wrist–Rocket* applies § 1065, but refers to cases involving § 1115(b)(5). The court concludes: "We can conceive of no reason to reach a different result in this case, where the common-law owner's use antedated the registrant's use." *Wrist–Rocket*, 578 F.2d at 731. For the reasons set forth in this Memorandum, this Court believes that state common law governs § 1065 territorial issues, while federal law governs the same issues under § 1115.

5. It should be noted that the court in *Natural Footwear* relied on 15 U.S.C. § 1115(b)(5), despite the fact that it was determining a senior user's rights after a junior user had registered under the Lanham Act.

user's rights, one which maintains a rule of automatic statewide protection. *See Socony–Vacuum Oil Co. v. Oil City Refiners, Inc.*, 136 F.2d 470 (6th Cir.1943); *McCarthy* § 26.12. Defendant contends that the rule governs this case and entitles Defendant to statewide rights to its mark.

Upon reviewing the origins, language and application of the Sixth Circuit's doctrine as well as the influence of subsequent statutory enactments, this Court is convinced that it is not applicable to these circumstances. The Sixth Circuit considered *Socony–Vacuum* prior to the adoption of the Lanham Act. Therefore, as the court acknowledged, "property in trademarks and the right to their exclusive use rests upon the law of the several states." *Socony–Vacuum*, 136 F.2d at 475. In that particular instance, the applicable law was that of Ohio. To determine Ohio law the court relied on "the well-settled rule" that the protection of a trademark "extends to the whole state unless the state has . . . reduced the territorial limits of the mark to a smaller area." *Id.* (citing Justice Holmes' concurrence in *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 424–26, 36 S.Ct. 357, 364–65, 60 L.Ed. 713 (1916)).[6] *Socony–Vacuum* also relied on an earlier case dealing with Ohio law, *Western Oil Refining Co. v. Jones*, 27 F.2d 205 (6th Cir.1928), in support of its conclusion that under Ohio law a trade name user is granted statewide protection.[7]

For our purposes what is most important and quite clear is that *Socony–Vacuum* does not purport to establish Sixth Circuit common law on this issue. Moreover, none of the courts determining a prior user's rights vis-a-vis a junior registrant explain why they seemingly choose to ignore the plain language of the statute, which directs them to look to *state law* in determining a senior user's rights as of the junior user's federal registration. In the absence of any satisfactory explanation for the application of federal common law. This Court will follow the clear directive of the statute and will look to Kentucky law to determine the territorial extent of Defendant's rights.

### B.

No Kentucky case has clearly delineated the territorial extent of a user's rights; however, a number of them have implied that a user only has rights over the area it actually uses. As early as 1937, the highest court in Kentucky recognized that rights to a trademark or trade name could be limited to the locality in which the user utilized the name. *See U–Drive–It Co. v. Wright & Taylor*, 270 Ky. 610, 110 S.W.2d 449, 453 (1937). In *U–Drive It*, the court held that, "A newcomer in the field has no right to use another's distinctive trade-name or designation which, though it be unavailable for exclusive use, has become locally associated with an established business." *Id.* That is, even

---

**6.** Whether this was a "well-settled rule" in all states is unclear. Holmes, in his concurrence, offered no authority for his assertion about the state of trademark common law at that time. Whether such authority exists and whether Holmes was correct in his hunch about the common law is immaterial. It is important to remember, however, that Holmes did little more than offer an opinion as to what the common law of Alabama "may well say." He then suggested his own belief that if his view were "adopted, we get rid of all questions of penumbra, of shadowy marches where it is difficult to decide whether business extends to them." *Hanover*, 240 U.S. at 426, 36 S.Ct. at 365. *Socony–Vacuum* did not refer to this concurrence to establish a Sixth Circuit rule of statewide protection; it only used it for what it suggested about the Ohio law applicable to its case. Apparently Holmes' dictum has been rejected now by the vast majority of courts. *McCarthy* § 26.12[2], at 26–43; *see also Kroger Co. v. Superx, Inc.*, 193 USPQ 245, 248, 1976 WL 21054 (E.D.Pa.1976).

**7.** Whether this was the correct interpretation of Ohio law is also immaterial for our purposes. In a recent trademark case, the Sixth Circuit noted that the Ohio Supreme Court had apparently clarified and strengthened its rule of statewide protection. *See Frisch's Restaurants v. Elby's Big Boy of Steubenville*, 670 F.2d 642 (6th Cir.1982). Unfortunately, the Sixth Circuit's aside that "[m]ore to the point [the Sixth Circuit] in *Socony–Vacuum Oil Co. v. Oil City Refiners, Inc.* . . . determined that the user of a trademark 'was entitled to the exclusive use of the name within the entire state as territory which may reasonably be anticipated to be within normal business expansion,'" *Frisch's*, 670 F.2d at 649 (quoting *Socony–Vacuum*), has fueled further misunderstanding. *Frisch's* was primarily concerned with "likelihood of confusion" and it is often cited for its analysis of that issue. From reading the facts, it is unclear whether Ohio law or federal law should have properly applied to the trade territory issues in that case. In any event, this "aside"

though a user may not have exclusive rights to a name, it may earn exclusive rights in a locality through the use of that name. Since the locality in question was the city of Louisville, the court clearly recognized ownership rights in a trade area smaller than the entire state.

Similarly, in *Louisville Taxicab & Transfer Co. v. Yellow Cab Transit Co.*, the Western District of Kentucky, applying Kentucky common law,[8] found that, "The protection of a trade-mark is limited to appropriate trade territory." 53 F.Supp. 272, 277 (W.D.Ky. 1943), *modified on other grounds, Yellow Cab Transit Co. v. Louisville Taxicab & Transfer Co.*, 147 F.2d 407 (6th Cir.1945). In that case, the "appropriate trade territory" was found to be Louisville, Kentucky. *Id.*

In another federal case dealing with Kentucky common law trademark rights,[9] the Sixth Circuit held: "While a trade-mark extends to every market where the trader's goods have become known and identified by his issue of the mark, the mark itself cannot travel to markets where the trader does not offer, or has not offered, the articles for sale." *E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512, 522 (6th Cir. 1943). Finally, in *Grocers Baking Co. v. Sigler*, 132 F.2d 498 (6th Cir.1942), the Sixth Circuit found statewide protection on the facts, but stopped short of adopting that rule as a matter of law. Saying first that "a suit to enjoin unfair competition and common law trade-mark infringement is governed by local law" the court then held that the "record clearly shows that the appellant had built up a state-wide business in 'Honey–Krust' bread products." *Id.* at 501–502. While the court also noted that "[t]he state has been held to be an appropriate division of trade territory," it says this in light of the abundant evidence of appellant's state-wide advertising and goodwill. *Id.* In that case, the state was the appropriate division of trade territory. However, the facts of the present case appear to be distinguishable.

Defendant argues that KRS 365.567(6) ("Registrability") implicitly states a rule of automatic statewide protection by prohibiting the registration of a mark which "[c]onsists of ... a mark so resembling a mark ... previously used in this state by another ... as to be likely ... to cause confusion." The Court views this statute quite differently. By prohibiting the registration of a mark which is being used by another, the statute denies exclusive statewide protection of a mark regardless of the priority of use. The language of the statute acknowledges the reality that common-law rights among trademark users may have to be divided into areas smaller that the state. For example, a prior user could not obtain statewide protection by registering its mark once a second user began using its mark in Kentucky as well. Instead, the two users would have to determine their respective rights under the common law which recognizes less than statewide trade areas.

The above analysis is in keeping with the basic tenets of trademark law: Trademark rights arise out of prior appropriation and use. *E.F. Prichard*, 136 F.2d at 518. If a user has not utilized its trademark beyond a given trade area, it should not be deemed to have acquired rights beyond that area. Similarly here, if a jury finds that Defendant's use of "Advance Auto Marks" has been limited to Jefferson County and nearby regions, Defendant should not be given exclusive rights beyond that area.

Admittedly, this Court does not find an abundance of material from which to predict how Kentucky courts may rule on this issue. However, the limited evidence available suggests that Kentucky would define Defendant's territorial rights by the extent of its current or anticipated trade area. Indeed, this approach results in a conclusion similar to that of Judge Charles Allen, in *King Bearings v. King Bearing, Inc.*, in which he specifically rejected a request for automatic statewide rights, noting that market pen-

---

does not establish a Sixth Circuit rule covering our circumstances.

**8.** The court explicitly stated: "The cause of action asserted by the plaintiff involves the question of unfair competition and common law trade-

mark infringement and is controlled by the law of the State of Kentucky." *Id.* at 276.

**9.** "We have before us a case involving the right to a common law trade-mark." *E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512, 518 (6th Cir.1943).

etration is the generally accepted standard for determining territorial rights. 882 F.Supp. 630 (W.D.Ky.1994). He explained:

> Plaintiff contends that this case should be resolved by using the state boundary for defining the market. Although that approach has been used in cases where there is state control of the product ... *in the majority of cases, courts have used trade areas rather than state boundaries as appropriate for market penetration.*

*Id.* at 635 (emphasis added).

The historical purposes of trademark protection include: the protection of product identification, to protect marketing advantages and the encouragement of economic expansion. The Court believes that sound economic and practical reasons have caused courts to move from the common law state-wide rule which Justice Holmes championed some 80 years ago. The trade area rule may better meet modern needs. Courts have become more sensitive to the increased movement of trademark users throughout the country, and have been more reluctant to inhibit trade expansion of others by granting an isolated user automatic statewide rights. While Holmes thought it unfair to deny a senior user the statewide fruits of its product identification; it seems just as fair today that senior users have the power to prevent only that expansion or to extract only those royalties that impact the senior users' actual or anticipated use of their marks. To be sure, the trade area rule creates those "difficult to decide" penumbras which Holmes thought so harmful. However, the Court concludes that on the whole it will produce fairer results in a modern economy.

## V.

 Defendant seeks to cancel Plaintiffs' two 1994 federal registrations, alleging both prior use of "Advance Auto Parts" and fraud on the PTO. According to Section 37 of the Lanham Act, "in any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. Therefore, courts have concurrent power with the Patent and Trade Office to conduct cancellation proceedings. *See McCarthy* § 30.32[1], at 30–160.1.

Defendant seeks cancellation of Plaintiffs' two 1994 federal registrations on the grounds that Defendant has prior use of the trade name, "Advance Auto Parts" which is confusingly similar to Plaintiffs' "Advance Auto Parts" mark. 15 U.S.C. § 1052(d). The test for this determination is the same "likelihood of confusion" test applied above. *See Food Specialty Co. v. Catz American Co.,* 58 CCPA 710, 433 F.2d 817, 818 (1970); *McCarthy* § 20.14[2].

Plaintiffs cannot establish that they had prior use of "Advance Auto Parts." Plaintiffs' 1988 application for federal registration stated that they first used "Advance Auto Parts" on March 3, 1984. Defendant has used "Advance Auto Parts" since the opening of its first store in 1974.

 Plaintiffs argue that they should be allowed to "tack on" use of "Advance Auto Parts" to their earlier use of "Advance" and "Advance Stores." However, courts have held that in order to tack on a newer mark to an older one, the user must show that the newer mark is the "legal equivalent" of the old one. *Van Dyne–Crotty, Inc. v. Wear–Guard Corp.,* 926 F.2d 1156, 1159 (Fed.Cir. 1991). Showing that two marks may be confusingly similar, is not sufficient to allow the user to tack the use of one on to the use of the other. *Id.* Tacking should only be considered in rare instances. *Id.* at 1160.

In *Lincoln Logs Ltd. v. Lincoln Pre–Cut Log Homes, Inc.,* 971 F.2d 732, 735 (Fed.Cir. 1992), the court refused to allow the user to tack the current "Lincoln" mark onto the earlier version, the "Lincoln" profile mark. *See also Pro–Cuts v. Schilz Enterprises, Inc.,* 27 USPQ2D 1224 (TTAB 1993) (tacking not permitted between Pro–Kut with design and Pro–Cuts). Similarly, here, Plaintiff should not be allowed to tack on a name with added words.

Determining whether a later mark is the "legal equivalent" of an earlier mark is a question of law. *Van Dyne–Crotty,* 926 F.2d at 1159. After examining prior cases and

determinations, it seems clear that Plaintiffs should not be allowed to tack on "Advance Auto Parts" to their prior use of "Advance" and "Advance Stores." *Id.* at 1159 (stating that mere visual review of the marks is sufficient to make a determination of legal equivalence). Therefore, Defendant had prior use of "Advance Auto Parts."

▇ Under 15 U.S.C. § 1064, a user can petition for the cancellation of a mark for up to five years, if the user had prior rights to the mark. Defendant cannot attack Plaintiffs' 1988 registration because the five years have passed; however, it now seeks to cancel Plaintiffs' two 1994 registrations.

Plaintiffs argue that a party seeking to cancel a federal registration based on prior rights cannot be damaged by those registrations if the registrant owns an existing federal registration for the same or a substantially identical mark for the same or substantially identical goods or services. *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 56 CCPA 946, 407 F.2d 881, 884 (1969).

Plaintiffs' 1994 registrations involve the same goods as did the 1988 registration: auto parts and supplies. Whether Plaintiff can assert this defense depends on whether the 1988 registered mark is "the same or substantially identical" to those registered in 1994.

Plaintiff uses "Advance Auto Parts" in all three of its registrations. The only difference between earlier and later marks is the design element. According to past cases, the mere stylization of a name, or the addition of a design element is not enough to defeat the *Morehouse* defense. *See, e.g., S & L Acquisition Co. v. Helene Arpele Inc.* 9 USPQ2d 1221, 1225–26 (TTAB 1987). Therefore, Defendant cannot attack Plaintiffs' 1994 registrations.

## VI.

▇ Defendant also seeks to cancel Plaintiffs' registration because it says Plaintiffs obtained the registration fraudulently. 15 U.S.C. § 1064(3) states that a registration may be subject to a petition to cancel "[a]t

any time if [the registered mark's] registration was obtained fraudulently." Defendant alleges that Plaintiffs committed fraud on the PTO by failing to disclose Defendant's allegedly superior prior rights to use the name "Advance Auto Parts." In order to sustain this claim, Defendant must prove its allegations with clear and convincing evidence, that leaves no "room for speculation, inference or surmise" with any doubt "resolved against the charging party." *Smith Int'l Inc. v. Olin Corp*, 209 USPQ 1033, 1044 (TTAB 1981). *See also Anheuser–Busch, Inc. v. Bavarian Brewing Co.*, 264 F.2d 88, 92 (6th Cir.1959) (stating that "fraud is not lightly to be presumed").

Defendant argues that at least as early as May 1992, before Plaintiffs' final two registrations, Plaintiffs knew Defendant had been using "Advance Auto Parts" for 17 years. Even if this were the case, Defendant does not show that Plaintiffs knew Defendant's rights were superior. Even now, Plaintiffs argue that their rights are superior by virtue of their use of "Advance" for the past sixty years. Plaintiffs were not expected to foresee how this Court would hold on the issue of tacking. *McCarthy* § 31.21[3][d][I] (explaining that the "signer of an application oath" need not be "a fortune teller as to what courts will hold").

Plaintiffs were under no duty to disclose to the PTO users "whom he may have heard or noticed are using the mark if he believes that the rights of such others are not superior to his." *Bonaventure Associates v. Westin Hotel Co.*, 218 USPQ 537, 540 (TTAB 1983). *See also, Wurzburger Hofbrau Aktiengesellschaft v. Schoenling Brewing Co.*, 331 F.Supp. 497, 169 USPQ 714 (S.D.Ohio 1971), *aff'd*, 1972 WL 17719, 175 USPQ 391 (6th Cir. 1972). Defendant has produced no evidence that Plaintiffs knew Defendant's rights would be deemed superior. Under traditional standards of proof, the evidence Defendant proffers may be sufficient to create a genuine question as to what Plaintiff did or did not know; however, in this case, where any doubt must be resolved against the charging party, it is not enough.[10]

**10.** An example of clear and convincing evidence

of fraud is a senior user's failure to acknowledge

## VII.

■ Defendant also asserts federal claims of infringement and unfair competition. Under 15 U.S.C. § 1125(a), Defendant must establish (1) "ownership of a specific service mark in connection with specific services"; (2) continuous use of the service mark; (3) secondary meaning if the mark is descriptive; and (4) a "likelihood of confusion among consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir.1991). As discussed previously, the Lanham Act protects trade names as well as marks.

Kentucky law requires a showing of "unjust appropriation of, or injury to, the good will or business reputation of another." *Galt House, Inc. v. Home Supply Co.*, 483 S.W.2d 107, 174 USPQ 268, 270 (Ky.1972). "Underlying the whole theory is the ... actual or intended deception of the public for business reasons." *Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 163 USPQ 438, 441 (Ky.1969).

In both claims, the extent of Defendant's ownership rights over "Advance Auto Parts" depends on the jury's determination of Defendant's trade area. Therefore, the survival of these claims is contingent on whether the jury finds that the territorial extent of Defendant's rights reaches the regions in which Plaintiffs currently operate their auto supplies stores. Based on the known facts, it is highly unlikely, to say the least, that Defendant can succeed on these claims.

■ Even if Defendant establishes a claim for infringement, it must show actual damages. 15 U.S.C. § 1117(a) permits the recovery of Plaintiffs' profits, any damages sustained by Defendant and the costs of the action upon a showing of infringement. To recover damages, the party claiming them must show (1) the existence of damages; and (2) substantial evidence to permit a fact finder to make a fair and reasonable assessment of the amount of damages. *Broan Mfg. Co. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1236 (6th Cir.1991).[11]

Defendant has made a sufficient showing of possible damages to overcome Plaintiffs' summary judgment motion. Consumer skepticism and displeasure may have resulted from the confusion between the two stores. Defendant claims it was forced to honor Plaintiff's warranties to salvage its goodwill. As noted in *Broan*, the Lanham Act "provides that any damages sustained by the plaintiff are recoverable." *Broan*, 923 F.2d at 1236. A genuine issue of material fact remains concerning whether Defendant actually suffered damage resulting from customer confusion and, if so, and the amount of damage Defendant suffered.[12]

## VIII.

■ Defendant also seeks an accounting of Plaintiffs' profits. Defendant must show Plaintiffs' bad faith in order to receive an accounting. According to the court in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Ohio*, 849 F.2d 1012, 1015–16 (6th Cir.1988), "[b]ecause no bad faith was shown, the District court was correct in refusing to order an accounting." *See also*

the conflicting rights of a junior user which are clearly established by a court decree. *Rosso and Mastracco, Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1266 (Fed.Cir.1983). *See also Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990) (finding fraud where the registrant had admitted knowledge of an earlier decision which denied its claim that it was the only entity entitled to use the mark in question).

11. Defendant cites to *Frisch's Restaurants, Inc. v. Elby's Big Boy* to support its proposition that actual damages need not be shown; however, *Frisch's* is a case for injunctive relief. The court required no proof of actual damages to award an

injunction. 670 F.2d 642, 647 (6th Cir.), *cert. denied, Elby's Big Boy of Steubenville, Inc. v. Frisch's Restaurants, Inc.*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). Therefore, this case is not applicable.

12. Plaintiffs cite to *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir.1991), to support their proposition that only confusion among a user's own customers constitutes cognizable damage; however, this case refers to the "actual confusion" element in determining the likelihood of confusion between two marks, not the types of damages a user may recover under 15 U.S.C. § 1117(a).

*Nalpac, Ltd. v. Corning Glass Works,* 784 F.2d 752, 755 (6th Cir.1986). Furthermore, the awarding of profits is an equitable remedy. *Wynn Oil Co. v. American Way Service Corp.,* 943 F.2d 595, 606–07 (6th Cir.1991). Given the facts of this case, the damages Defendant alleges are unrelated to Plaintiffs' profits. Therefore, the various equitable rationales for awarding profits, such as unjust enrichment and deterrence, are absent here. Defendant may not receive an accounting of Plaintiffs' profits.

### IX.

Plaintiffs seek the cancellation of Defendant's September 1994 service mark registration under KRS 365.591. According to the statute, "The Secretary shall cancel from the register ... [a]ny registration concerning which a court of competent jurisdiction has found ... [t]hat the registered mark is so similar to a mark registered by another person in the United States Patent and Trademark Office prior to the date of the filing of the registrant's application and not abandoned as to likely cause confusion or mistake, or to deceive."

This Court has already decided that Defendant and Plaintiffs' use of "Advance Auto Parts" is likely to cause confusion. In addition, neither parties dispute that Plaintiffs registered their mark with the PTO in July 1994, while Defendant registered its name with the state in September 1994. Therefore, Defendant registered a mark so similar to one previously registered by Plaintiffs with the PTO so as to cause confusion. For this reason, Defendant's state registration should be canceled.

In addition, a state registration should be canceled if it was "granted improperly." Under KRS 365.567, a mark may not be registered if it "[c]onsists of or comprises a mark so resembling a mark registered in this state or a mark or trade name previously used in this state by another ... as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion or mistake or to deceive." At the very least, Plaintiff was using "Advance Auto Parts" in Kentucky at the time Defendant registered its name. Therefore, registration was improperly granted and should be canceled.

The Court is entering an order consistent with this Memorandum Opinion.

### ORDER

This case is before the Court on Plaintiffs' Motion for Summary Judgment and Defendant's Motions for Partial Summary Judgment. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is SUSTAINED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment on the issue of likelihood of confusion is SUSTAINED.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment on the issue of territoriality is DENIED consistent with the accompanying memorandum opinion.

As a consequence of this opinion, the following issues will be decided at trial:

(1) The Territorial Extent of Defendant's Ownership Rights in "Advance Auto Parts;"

(2) Defendant's state and federal infringement claims.